So you're not going to have a lot of time this morning. Feel free to get to the heart of your argument and make the points that you think we really need to know. We're probably going to have some questions. If you're answering a question from the court when the red light shines, feel free to finish your answer. But otherwise, please be mindful of our time. And when the red light shines, it's time to wrap it up. If you're answering a question from the court, you won't lose rebuttal time. But wrap it up. Our first appeal this morning is Ficken v. City of Dunedin. Mr. Bargill? Good morning, Your Honors. And may it please the court, my name is Ari Bargill on behalf of the Reserved Three Minutes for Rebuttal. We are here today because the city fined my client $500 per day and $30,000 total for tall grass. These fines are unconstitutional for two reasons. First, the fines imposed violate the Eighth Amendment's Excessive Fines Clause. And second, the manner in which those fines were imposed violates Jim's right to procedural due process. First, beginning with the excessive fines, the trial court's Eighth Amendment analysis wrongly conflated statutory compliance with constitutionality. Under Bajikashian, courts afford substantial deference to legislatively authorized fines. But Bajikashian also warns not to conflate statutory compliance with constitutionality. Applying the Bajikashian factors in this case, the strong presumption afforded to the government, which of course must be rebuttable, is overcome here. Now, this is a multifactored analysis and there's no exhaustive list, but the four factors that I think are critical for the court to consider here with respect to the harm caused by the appellant's offense, the culpability of the parties, whether Jim falls within the class of persons for whom $500 daily fines for overgrowth are intended, and the other penalties authorized by the legislature. First, going to the issue of harm, here the unrebutted testimony is that Jim's tall grass hurt nobody. The trial court erred, however, by effectively adopting the dissent in Bajikashian and crediting the speculative— Let me ask it this way. Is the fact that someone could possibly be hurt a harm? In other words, is the fact that you have a danger on your property, even if someone doesn't actually fall into that danger, enough to create a harm that can be targeted by the city? No, Your Honor, I don't think so. And I think what that does is it incorporates, essentially, what is the dissent— You can just have a big hole in your property and anyone can fall into that hole and that's cool as long as no one actually falls in. No, Your Honor, I should clarify. If there were a big hole in the property, that would, of course, put us in a different box of an immediate threat to public health and safety, which allows the government to take different steps in remediating that. Why is this not, if not an immediate, a significant one in that the evidence, as I understand it, is that tall grass, at least at a certain level, attracts different animals that are not ones that you want in a residential neighborhood, and also that it diminishes property value, also something important to a nice residential neighborhood like Dunedin. The record evidence in this case, Your Honor, is that it did neither of those things, and I think that's relevant because it takes us into the Bajikasian analysis and what Your Honor is articulating— Can you go back to the record? Because I understand that the record is undisputed that those were possible harms from the tall grass. Yes, and what I'm trying to communicate, Your Honor, is that while there were possible harms associated with tall grass, the question isn't whether there are potential harms associated with this violation. The question is whether there were, in fact, those specific harms that you've described in existence on the property. Those are. I mean, in other words, tall grass does cause diminished value. It's whether there's evidence that the house next door was diminished by $10,000 or $20,000. The evidence, as I understand it, is it does cause diminished value. Well, to the testimony, Your Honor, there wasn't any testimony suggesting that it does cause diminished value. I asked the city attorney about that in his deposition. He said there's no evidence for that. But what I'm trying to get to is— No, no, no. Counsel, I don't believe he said there was no evidence that it didn't cause a diminution in value. I thought your question was, can you prove that it went down on any particular person's property by a certain amount or by any amount? We don't know that. It's very difficult to find out. You don't know who thought about selling the property and we can't get what we've got in it because of this abandoned-looking house down the street. It's diminished property value. That's right. You can't mean that the city has to come in and say, here's what the property was appraised at down the street. Here's the two on each side of this property. Here's what it was appraised at. But for the derelict look of this property of the plaintiff, it would have been appraised at the following. The city doesn't have that burden. No, Your Honor, the city might not have that burden. But when we're talking about whether or not there was actual harm associated with the condition on my client's property, the question is whether there was actual harm and not hypothetical harm under the Bajikashian— So if you live in a neighborhood, and I don't know where you live, let's assume you live in a suburban neighborhood, and you've got a property that looked like this and it constantly looked like this. And when the city was about to enforce its ordinance, it would be mowed. And then six weeks later, it looks like this again. That wouldn't harm you and your enjoyment of your property as you drove by it every day? That's not the type of harm that's been articulated. I'm articulating it now. That's real harm. People don't want to live next to an abandoned house that looks abandoned, and it looks like nobody cares about it, and it looks like the neighborhood is going to haydays. That's the part of the real harm. It's self-evident. You don't need somebody to present a property appraiser to say it went down 10 percent throughout the neighborhood. And we're not suggesting that the city couldn't have fined Jim. We're not here because the city fined Jim. We're here because the city— Okay, you tell me then. You tell me. What is the maximum constitutionally permissible fine they could have imposed on your client? I don't think that anything in excess of what this court has already said would be appropriate, would be necessary here. I think if you look at a case like— What have we said that you say provides the measure? In the Moustakis case, this circuit looked at fines of $150 involving a family that intentionally thumbed its nose at the city of Fort Lauderdale for 14 years and failed to correct a condition that existed on its property. There, the court— And we said anything over $150 was constitutionally excessive wouldn't be accepted. We held that? No, Your Honor. The court didn't say that. The court did acknowledge that in that case— Why, if $150 is constitutionally permissible, what's the basis of your argument that's the maximum amount that's constitutionally permissible? Our argument is that if the maximum amount is constitutionally permissible for the infraction of tall grass, then virtually no fine is not constitutionally permissible. This is not the outer range— We wouldn't say that. They could have imposed $10,000 a day, and we might find that your case is that this was a repeat violator, and that's the most charitable way it can be put. He's playing bureaucratic inertia. I'll wait until right before they're beginning to fine me, or right after they do, and I'll have it mowed, and then I'll give it another six to eight to 10 weeks. When they warn me again, I'll find somebody to mow it, and then we'll start the game over. That's the problem. Well, just to clarify, Your Honor, in this case, there was no warning. There was no fine or condition of tall grass on his property. That's because he was a repeat violator. He did have notice before the first fine and a deadline that he missed, right? That's correct, Your Honor. He was in the repeat violator box, which does result— He was fined for this. Well, because of this violation, about which you can have a hearing that he didn't show up for, you can be fined again as a repeat violator. He was warned then, wasn't he? That's right. That's right, Your Honor. We're not contesting that he wasn't told those things at the time of the 2015 hearing. What we're contesting here is that due process requires, and he didn't receive notice that he was being subject to fines, and fines were daily accruing on his property. Let's assume for the moment I agree with your interpretation of the city code that in order to have been fined for the July to August period, he was required to have been notified for that. Let's assume for the moment I agree that your reading is the correct one. Why couldn't that have been raised as an objection at the hearing to say, hey guys, you want to—hey board, you want to impose this fine from July to August. The city code requires that I have been given notice beforehand, so please don't give that to me. That would have been a valid objection to have been raised at the hearing, would it not? Perhaps, Your Honor, but it doesn't mean that he can't raise it here. The only wrinkle to that is I agree with you as a matter of exhaustion that he can. In other words, he's not exhausted out of court jurisdictionally, but in terms of an element of your procedural due process, it seems to me that that is—if he could have raised that there, and if the board had thumbed its nose, the circuit court has not even certiorary jurisdiction, plenary jurisdiction over all procedural errors that happen in front of the board under the Florida statute. So why is that not an adequate remedy? I think under Galbraith, this court explained that what matters here is whether or not the procedural due process violation, the lack of notice in this complete. If it's incomplete, then you have to go through the procedural process that you've just described. It's not— Well, it's certainly not complete until he's actually fined. I mean, for instance, if the city had done exactly what it did, they had the hearing, he doesn't show up, and then they say, you know what, we're going to give him another shot, we're not going to do anything, we wouldn't be here right now, right? Perhaps, Your Honor. And it's not complete until the fine is levied, right? I don't think so. I think the procedural due process violation here was the lack of notice, and that was something that was completed at the time that— I agree with you. That's your allegation that he didn't get good notice. But the question is, was there an adequate remedy for that? In other words, there's lots of times that a municipality doesn't give good notice. The question, constitutionally, is, can you—is there an avenue for you to raise that such to remedy this? And if perhaps, as you said, as you conceded—or I won't say conceded, but as you said, perhaps he could have raised this at the board hearing if he had showed up, why would that not be a sufficient avenue to rectify the notice violation? I think it's because the notice was complete. The remedy—it also goes to remedy. It's not just the existence of an appeal for the sake of an appeal. That appeal has to be adequate. And our argument is that it wouldn't be adequate because all it's going to get him is a new hearing. No, no, no. If he had—again, let's go back to my hypothetical. If he had showed up at the hearing and said, hey, listen, the code requires that I get notice first before you accrue the fine, and they looked at the—someone, the lawyer there, looks it up and says, you know what? Darn, he is 100% right. And we're going to adjourn the hearing or only assess him for post-notice violations. In this case, there were none because he fixed it in time. Why would that not have been a perfectly plausible thing that would have exactly happened if he had shown up and made that objection? I'm not quite sure that that's how it would have gone, but in any case, our position is that the procedural due process violation was complete under Galbraith. That allows us to bring a 1983 case in federal court, similar to the M.A.K. case out of the Tenth Circuit, which involved a notice issue just like this one where the court didn't kick it on these same grounds. But ultimately, that goes to the question of culpability, which is part of the Bajikasian analysis—what my client knew and whether or not he should be assessed fines of $500 per day for the infraction of tallgrass. So your position is that the State violation before the Board or agency or municipality is complete? It's not that it has no jurisdiction. The question is whether or not the procedural remedy that we're talking about here would have been adequate. In this case, I don't think that it would have been. Of course it would have been adequate because it would have given you another hearing, is what you say is the most you would get, but gives you another hearing and you can raise it there. And if they do it again, you can go back to the State Circuit Court and say we were deprived. Well, I think it's unclear. You can't just say, oh, it's complete. I'm going to skip State Circuit Court and go straight into federal court. That's not what McKinney says. I think the Kupke case from this circuit suggests that it's actually not clear whether you can actually get a new hearing. And our position is also that even in that new hearing, Jim's going to walk in, there's going to be a mountain of evidence, photographs from the dozen visits on his property where they tracked the tallgrass violation. And the outcome is going to be the same. The only way for the court to actually remedy this. Fine. Then you have a remedy of appealing at State Circuit Court and say this is not a procedural violation. This is a substantive violation. They're wrong. They violated my rights. McKinney doesn't guarantee you that you can win. It simply guarantees or looks to whether or not the state court system can remedy any procedural violation that you're claiming in federal court. Fair enough, Your Honor. I'm sorry. Go ahead. No, you go ahead. McKinney and the cases that the trial court cited in reliance on it and that the city cites in reliance on McKinney all speak to whether or not you can address procedural due process violations that occur in front of the board. Our quarrel is not with what happened in front of the board. It's what happened weeks before this case ever got to the board. We think that takes us out of the McKinney box and it's much more akin to this circuit's decision in Galbraith where the court there said there is a procedural due process violation that was complete long before this case ever got in front of an adjudicatory body. So that's what happened here. It all depends on when the violation occurred. Whether the violation was the lack of notice or whether it was when the fines imposed as Judge Luck has suggested. You've been answering questions from the court. It's two and a half minutes over, but you save, you will save your three minutes of rebuttal time. Let's hear from the city. May it please the court. Good morning, Your Honor. It's Jay Daniel on behalf of the city of Dunedin and the remaining appellees in the case with the law firm of Trascadena in Clearwater, Florida. Thank you for your time in hearing us today. Your admonition to move to the thrust of the argument is well taken, Your Honor. The thrust of the argument on the city's behalf is that the district court judge wrote a thorough, comprehensive... I think that would be an understatement. Legal analysis based on the evidence presented to her. That order is free of legal error, and so the city and the appellees request that the order be affirmed. I want to discuss briefly some questioning on the amount of the fine and whether it is based on the potential for harm or the actual harm caused. In this case, I don't think it matters because you have both present. You have the potential harm of the condition, the repeated condition. Now, throughout the case, I think one thing the evidence makes clear is that the appellant doesn't think a whole lot of the city's code, and that's okay. But the city itself respectfully thinks that this ordinance is no less important than its other ordinances. They are all promulgated for the purposes of ensuring the public health, safety, and welfare. And it's interesting in the record to talk about the diminution in property values. I think some of the most interesting evidence on that is the testimony of Kristen Mendez. Kristen Mendez was the real estate agent that Mr. Ficken asked to go to the hearing for him in 2018, and she knew him, not really at all, but only because she was driving by his property that summer and noticed that it was run down and that it was perhaps ripe for a sale. It was perhaps distressed, and it was perhaps impacting negatively the property values in that area. Your Honor, when the Bozsikagian factors are considered, Mr. Ficken falls into the class of persons to whom the regulation is directed. He is, as you've noted, a repeat violator. A repeat violation is a serious violation. He did cause harm to the city by the repeated violation of codes. And I want to talk briefly about the lesser penalties, because it's been suggested here by the appellant that a lesser penalty would have sufficed. But the record shows that that is not true, because in 2015, Mr. Ficken was violated, brought before the Board, found in violation, and no penalty. Zero. The Board had the opportunity, had the legal right under Chapter 162 to impose a fine up to $250 for a first offense, but it imposed a zero fine. Now Mr. Ficken says that a lesser penalty would have sufficed when the evidence shows that a zero penalty did not suffice. Under the Bozsikagian factors, Your Honor, and all the courts have said in the case, and certainly we agree, that there's a challenge, a big challenge in distilling the gravity of an offense into a monetary amount, into a monetary sort of relationship. Very difficult. It's also very difficult for a lay code enforcement board to do that, and that's why Chapter 162 contains the criteria that the Board must consider in doing that. And I don't want those to get lost in this The gravity of the violation here, understanding that the appellate, the appellant thinks not very much of our code, is pretty serious. A repeat violation of any code is a serious matter, and the city takes it seriously. The actions taken by the violator to correct. The actions taken by the violator to correct here are, as Judge Carnes pointed out, insufficient however you, however you view them. Mr. Ficken mows his lawn only when the city goes to tell him. He turned them into his property manager. That is inappropriate, and he was not there to explain his absence to the Board or his actions as well. So you can write a letter to the code enforcement board, and that's all well and good. They received it in evidence, but a letter can't be cross-examined and the previous violations committed by the violator. So even if the court, which it does not seem inclined to, accepts the idea that tall grass isn't important, it is, the code enforcement board considered the previous violations and the actions taken to correct the violation, and it did it all without Mr. Ficken's evidence, though he was properly noticed of the hearing. So, Your Honor, the fines are not in violation of the Eighth Amendment, and we do respectfully request that the order be affirmed. Relative to the due process argument, Your Honor, Mr. Ficken was afforded due process throughout these proceedings. Let me ask you this. Do you agree that under the city code that it requires notice to be given before the fines are imposed as to those? In other words, does the city code require that there be notice first and only after notice is given can you then violate for days post-notice where there's tall grass, even under a repeat violator situation? I think the city code can be read that way, but I think that the city has historically, in Mr. Trask's deposition testimony, has historically followed chapter 162.09 sub 1, which provides that the fine runs from the date the violation is observed. How can the relevant provision of the code reasonably be read that way? Read to me the relevant provision of the code. I apologize, Your Honor. I don't have the text of the code in front of me. All right. You go ahead. I'll pull it up for you because I do have it. Sure. On that same point, Your Honor, I will note that you've been provided no case law to say that even if the city code is read that way, that it's a violation of due process or a violation of any other law. I have it right here. It's section 22.79a. The code enforcement board, upon a finding that a repeat violation has been committed, may order the violator to pay a fine in an amount specified in this section or in the case of a continues past the date of notice to the violation of the repeat violation. In other words, for each date a repeat violation continues past the date of notice is when a fine can be done for a repeat violation. That's a fair reading of the statute, right? That is a fair reading of the ordinance. I don't know how you can read that to be any date after observed as opposed to any date after notice. Well, I think because the notice itself contains the date that the violation was observed, it has not been applied that way as a matter of history. Let's assume for the moment I think you got that completely wrong. Explain to me. Maybe need to revisit that issue in the future, but not necessarily for this case. Agreed. Why would that not be or why is the point that you're opposing counsel reasons that that itself is a due process violation? In other words, I'm entitled to contemporaneous notice at of the violation so that I can at least ameliorate the problem. I will have violated the day of the contemporaneous notice, but I could at least cut my grass right away instead of lying in the weeds, no pun intended, and waiting 40 days and then notifying and then having racked up $500 worth of fines. To me, that's the argument they're making. Why is that argument not persuasive? Because you've been offered no authority standing for the proposition that the violation of the failure to follow municipal code is a federal due process violation. It's not, but failure to give notice is when imposing fines. And their point is you're accruing each day without giving us notice. And at least the central component of due process, we've said, the Supreme Court has said, is notice and opportunity to be heard. Agreed. And Mr. Fickham was notified on multiple occasions leading up to 2015 and following the 2015 violation that additional violations, if the grass were to grow long again, that pictures will be taken and Mr. Fickham would be called before the court. So you're saying the 2015 notice is sufficient for due process purposes. In other words, what you're saying is the fact that we told them that if you do this again, that Spickett's going to be turning on no matter what, even though the code says different than that, that's enough? That's correct because it's in compliance with the state statute. 162.09 sub 1. Let's assume I don't agree with you with that. Why? Explain to me the third element of the due process violation, which is they're not being an adequate remedy. Why is there an adequate remedy here? Because they say on the other side that there's not, that we wouldn't went to the hearing, they would have put the pictures on, you would have found us in violation based on your reading, and there was no remedy for that. There are two reasons, Your Honor. The first is this. The case cited by the district court in its order, which is Central Florida Investment, Inc. versus Orange County, it's at 295 Southern 3rd, 292. It's on page 42 of the order. All errors below may be corrected. Jurisdictional, procedural, and substantive. They have plenty of review, including substantive, procedural, and jurisdictional ability to correct jurisdictional errors. Are you conceding that it wouldn't have, it would have necessarily unfolded the way your adversary has presented it, as opposed to what Judge Luck said earlier when he was questioning your opponent and suggested that you might have made this argument at the board hearing, and the attorney for the city takes a look and says, oh, you know what? He's right. Well, as does the court. The second reason I wanted to offer in support of that argument was this. I happen to do municipal law for a living, and I do dozens of code enforcement appeals every year, and I know that these types of errors, assuming it's an error in the first instance, can be corrected and are frequently corrected at that level because... In other words, there's a lawyer sitting there, and a lawyer opens up the code book and says, you know what? You got a point. We did this wrong, and you win, and case dismissed. That's the point of a hearing. I'm sorry? That's the point of a hearing. That's why the entire process exists as it does, and 162.11 talks about a plenary review of the record before the Code Enforcement Board, and the record before the Code Enforcement Board, of course, contains the notice of violation, right? When the notice was issued relative to when it was observed, and so all those things are part of the record before the Code Enforcement Board, and so if that is error... And so it'd be apparent from the record, then, even if you went straight to the state court, even if the board didn't correct the alleged error, you went to the state court, it would be apparent what his alleged error is. That's correct, Your Honor. Well, counsel, I think your case may be stronger than my colleagues have taken it, which is that even if the board says, no, we're not going to hear that. It doesn't make sense to us. We'll just go with the way it is. So long as you or he has a right to have plenary review of that in the state circuit court, McKinney's satisfied. You don't have a right to win before the administrative board where you have a hearing. McKinney looked at the entire state process. So you lose before the board, you have a right to raise the issue and seek relief in the state court system. Procedural due process from the federal perspective is satisfied win, lose or draw. There's nothing in the due process clause that guarantees someone before a state administrative board that they'll get the correct decision on a procedural issue. That's the whole point of McKinney. I agree with you, Your Honor. That really shocks me. I'll have to... I can't say it better, so I won't try to. I agree with you. And that's an argument that we've made since the outset in this case. In fact, it's even stronger than Judge Carnes even suggests. In McKinney, they relied on Florida's certiorari procedure, which is even more limited jurisdiction than plenary review. In other words, as I read the Florida law on code enforcement, they've said, we want to be so careful with code enforcement as opposed to other administrative remedies, we're going to expand the jurisdiction from normal narrow certiorari jurisdiction, which is limited also to procedural due process violations. But we're going to do it to plenary. You can bring up any error at the administrative level and we will review it, correct? Your Honor, I have litigated constitutional issues in code enforcement appeals. It is plenary. Virtually any error can be corrected, including this were it to be considered an error in the first instance, either of these. Do you have anything else? I have nothing further other than to again respectfully request this Court's affirmance of the summary judgment order. Thank you. Mr. Fargo, you've saved three minutes. Thank you, Your Honor. A few brief points. I'd like to spend about 20 or 30 seconds just on the relevant statutes and then move to the excessive fines issues. 162.063 provides that if a repeat violation is found, the code enforcement officer shall notify the violator. That same state statute requires that upon notifying the violator of the repeat violation, the code enforcement officer shall notify the code enforcement board and request a hearing. That sets a pretty simple 1-2-3 procedure for how this is supposed to go. One, observe the violation. Two, provide notice. Three, set it for hearing. They skip step two here. I understand that the Court has certain inclinations with respect to what we can bring up at this stage. Counsel, I will say I need to stop you there. State law is not as specific as the code that I read there. As I read there, there just has to be notice after the violation happens. It doesn't say when that notice has to be. It doesn't say what reasonable period it is. That's unlike the code. It seems like the city has given greater protection than the state statute has. Do you agree with me? I agree with respect to when fines can begin. Absolutely. And when it comes to whether or at what point due process considerations are triggered, our position is simple. Like in the MAK case from the Tenth Circuit, when a code enforcement officer steps onto your property, observes a condition, and starts the clock running on fines, that triggers due process considerations. That said, I understand that the Court is maybe a little bit unmoved by that argument, at least in terms of what Jim could have done after that point. But all of those things are still very much relevant to the excessive fines questions in this case and what Jim knew and what his culpability was. I have a trouble. I know you make that argument in your brief. It seems like bootstrapping to me. I don't understand why a constitutional violation here that's completely separate and apart would somehow affect our analysis for excessive fine purposes. I'm just having trouble understanding the connection. I think to the extent that culpability is a consideration of the excessive fines analysis, which I believe it is, then it's certainly relevant to understanding what Jim's frame of mind was. But even setting that aside, if the Court doesn't want to agree with that, just take a look at some of the— It's hard to get there, even if that is a consideration, given what happened in 2015. I mean, it's not like he wasn't notified that this is exactly what was going to happen in 2015. And even if we don't get there, Your Honor, let's take a look at the Moustakas case. $150 a day for 14 years of violations. Conley v. Dunedin, $50 and $100 a day. You know, one of the things is $150 a day for 14 years of violations suggests that maybe $150 a day is not enough. Well, I would argue that, they were very unlikely to get compliance at any stage after 14 years of noncompliance. And that's part of what we know about excessive fines. $500 a day gets your attention. Sure. The Marfitt v. Northport case, $25 a day, $50 a day. This Court has never sanctioned fines this high, this quickly, this rapidly. $500 per day for Tallgrass, without Jim's knowledge, while he was out of town settling his dead mother's estate. This is nothing like the woman who did get $500 a day fines for overgrowth where she had coyotes on her property that were eating pets and threatening children. Jim is not that violator. He is not within the class of persons for whom these violations are intended. Thank you. Thank you. We appreciate both of your arguments and we'll move to the next case,